IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RAY JEFFERSON CROMARTIE, | * | CIVIL ACTION NO. |
| | * | 7:19-cv-0181 (MTT) |
|     PLAINTIFF, | * | |
| v. | * | |
| | * | |
| BRADFIELD SHEALY, | * | |
|     Southern Judicial Circuit | * | |
|     District Attorney | * | |
| | * | |
| RANDA WHARTON, | * | |
|     Clerk of Superior Court, | * | |
|     Thomas County, | * | |
| | * | |
| | * | |
|     DEFENDANTS. | * | |

## DEFENDANTS' PRE-ANSWER MOTION TO DISMISS AND RESPONSE TO PLAINTIFF'S COMPLAINT

| | |
|---|---|
| **CHRISTOPHER M. CARR** | 112505 |
| Attorney General | |
| | |
| **BETH A. BURTON** | 027500 |
| Deputy Attorney General | |
| | |
| **TINA M. PIPER** | 142469 |
| Senior Assistant Attorney General | |
| | |
| **SABRINA GRAHAM\*** | 305755 |
| Senior Assistant Attorney General | |

*Counsel for Defendants*

Come now, Defendants Bradfield Shealy and Randa Wharton, by and through counsel, Christopher M. Carr, Attorney General for the State of Georgia, and file their Pre-Answer Motion to Dismiss and Response to Plaintiff's Complaint, showing the Court as follows:

## I.  INTRODUCTION

On October 1, 1997, Ray Jefferson Cromartie was sentenced to death by a Thomas County jury for the armed robbery and murder of Richard Slyz. *Cromartie v. State*, 270 Ga. 780, 781 n.1 (1999).  On October 22, 2019, Cromartie filed this complaint challenging Georgia's DNA statute, O.C.G.A. § 5-5-41(c), under 42 U.S.C. § 1983.  Cromartie argues that O.C.G.A. § 5-5-41(d) both facially and as-applied violates his due process rights and his right to access courts.  Cromartie seeks to have O.C.G.A. § 5-5-41(c), as construed by the Georgia Supreme Court, declared unconstitutional, to obtain an injunction requiring Defendants "to produce and release" specified physical evidence for DNA testing, and to enjoin Defendants from carrying out his valid sentence of death.  However, both *DA's Office v. Osborne*, 557 U.S. 52, 129 S. Ct. 2308 (2009) and *Skinner v. Switzer*, 562 U.S. 521, 131 S. Ct. 1289 (2011), show that Cromartie's challenge to Georgia's postconviction DNA

procedures lack merit.  Accordingly, Cromartie's complaint should be dismissed for failure to state a claim and his motion for stay of execution should be either be denied or dismissed as moot.

## II.  STATEMENT OF THE CASE

### A.    FACTS

#### 1. Madison Street Deli

On April 7, 1994, Dan Wilson, the clerk of the Madison Street Deli was shot in the face as he was washing dishes in the back kitchen.  Doc. 18-12 at 36, 111.  He was shot with a .25 caliber handgun which testimony at trial showed Cromartie had borrowed from his cousin Gary Young.  *Id.* at 63, 107-08.  Wilson survived the attack.  *Id.* at 61-64.

A surveillance video camera recorded the events proceeding the shooting of Wilson and captured an individual resembling Cromartie attempting unsuccessfully to open the cash register.  *Id.* at 67-70, 84-87; Doc. 18-14 at 4.

Witnesses testified that Cromartie obtained Young's handgun prior to the Madison Street Deli shooting and Cromartie made statements implicating himself in the Madison Street Deli shooting to witnesses that

2

testified at trial.  Doc. 18-12 at 111; Doc. 18-13 at 46.  Specifically, Carnell Cooksey testified that on the night of the Madison Street Deli shooting he saw Young give Cromartie his handgun, which Cooksey identified as the handgun shown at trial to be the weapon used in both convenience store shootings.  Doc. 18-12 at 107-09, 115, 120-21.  Cooksey also testified that Cromartie asked him if he was "down with the 187"—which was "slang for robbery"—and Cooksey told Cromartie he was not interested.  *Id.* at 111.

In corroboration, Young testified that he gave the handgun to Cromartie identified as the weapon used in the Madison Street Deli shooting. Doc. 18-13 at 28.  Young also testified that Cromartie confessed to him that he shot the clerk at the Madison Street Deli.[1]  *Id.* at 46-52.

### 2.  Junior Food Store Crimes

Approximately two days later, nearly identical crimes were committed at the Junior Food Store—only this time the store clerk died as a result of being shot in the head.  During the early morning hours of April 10, 1994,

---

[1] Additionally, Katina Washington testified that Young gave his handgun to someone on the night of the Madison Street Deli shooting and Cromartie was there when that occurred.  Doc. 18-15 at 39-40.  However, because Washington did not see the hand-off she could not positively identify to whom Young gave his handgun.  Id. at 41.

Thaddeus Lucas (Cromartie's step-brother) drove Cromartie and Corey Clark to the Junior Food Store located in Thomasville, Georgia, ostensibly for Cromartie and Clark to steal beer from the store.  Doc. 18-15 at 82, 89.  Lucas testified, corroborated by Clark's testimony, that after dropping Cromartie and Clark off near the side of the Junior Food Store, Cromartie instructed Lucas to wait for him and Clark at "Providence Plaza" apartments which was located nearby.  *Id.* at 89, 139.  Upon entering the store, Clark testified he walked to the beer cooler in the back of the store while Cromartie walked down the first aisle to the front cash register.  *Id.* at 140.

As with the first victim, the store clerk Richard Slysz was shot twice in the head as he sat on a stool behind the register.  *Id.* at 140-41.  Clark testified he was "shocked" and the shots were "unexpected."  *Id.* at 140.  Ballistics tests confirmed that the same Raven .25 caliber pistol was used in both the Madison Street Deli and Junior Food Store shootings.  Doc. 18-16 at 12-21.

Clark testified that he saw Cromartie unsuccessfully attempt to open the cash register.  Doc. 18-15 at 141-42.  Clark then went behind the counter and tried to open the cash register while Cromartie went to the back of the

4

store and stole two twelve packs of Budweiser beer from the store's cooler. Doc. 18-12 at 117; Doc. 18-15 at 142-43. Both men then fled the scene. Doc. 18-15 at 142. Clark testified that as Cromartie was fleeing the scene, one of the cases of Budweiser tore open, spilling beer cans onto the muddy ground. Doc. 18-15 at 143; *see also* Doc. 18-12 at 113, 134. Clark gathered all of the cans but two, got into Lucas' car at Providence Plaza with the beer, and all three men returned to the Cherokee Apartments. Doc. 18-15 at 143; *see also id.* at 90-91.

Walter Seitz,[2] who worked at the Jack Rabbit Foods store, which sat across a well-lit street from the Junior Food Store, corroborated Clark's testimony. Seitz explained that he had a clear view into the Junior Food Store and "never lost sight of the store" after he heard the gunshots. Doc. 18-15 at 25-27. He testified that he heard the gunshots, then saw a "light skinned black" person, which was shown at trial to be Cromartie, (*id.* at 147; Doc. 18-17 at 150-51), run from the front of the store "where the clerk was to the back of the store," then run from the store with "two twelve packs of beer"

---

[2] Seitz called in the original complaint to the police regarding the Junior Food Store shooting. Doc. 18-13 at 22-23.

(Doc. 18-15 at 26-27).  Following this individual, Seitz saw another male, "darker in complexion and thinner"[3] exit the store in the same direction as the first male.  *Id.* at 28-29.

William Taylor also corroborated Clark's testimony.  Taylor testified that on the night of the crimes he was driving by the Junior Food Store and saw two black individuals come out of the Junior Food Store, run to the left of the store, "drop something perhaps and go back to pick it up."  Doc. 18-12 at 133.  Taylor stated he thought the item the individual was carrying was beer. *Id.* at 134.

On the same side of the store in which Taylor testified he saw the individuals drop what he thought was beer, the police found a footprint, which was identified as a possible match for Cromartie's shoes but not Young's, Clark's or Lucas' (Doc. 18-17 at 52-53), a couple of beers, and a portion of a Budweiser beer carton with Cromartie's thumb print, containing 15 points of comparison (Doc. 18-13 at 140-41, 148; Doc. 18-18 at 58).  *See*

---

[3] Clark testified at trial that he was 6'2" and weighed 189 lbs. and was approximately the same size at the time of the crimes.  Doc. 18-15 at 134.  He also testified that he was taller and darker in skin tone than Cromartie.  *Id.* at 142.

*also id.* Doc. 18-13 at 18, 201-03; Doc. 18-15 at 207-10, 217-18; Doc. 18-17 at 150.

Law enforcement brought in the canine unit to track the perpetrators of the Junior Food Store crimes.  The dogs tracked to the Providence Plaza apartments' parking lot where the trail ended.  Doc. 18-13 at 204; Doc. 18-15 at 89, 139.

Finally, Cooksey testified that Cromartie confessed to him that he committed the murder at the Junior Food Store.  Doc. 18-12 at 114.

### B.    Trial, Appellate, and Habeas Proceedings

Cromartie was convicted in Thomas County of malice murder, armed robbery, aggravated assault, aggravated battery, and possession of a firearm during the commission of a crime.  *Cromartie v. State*, 270 Ga. 780, 781 n.1 (1999).  The jury recommended a sentence of death on October 1, 1997.  *Id.* The Georgia Supreme Court affirmed Cromartie's convictions and death sentence on March 8, 1999.  *Cromartie v. State*, 270 Ga. 780, *cert. denied, Cromartie v. Georgia*, 528 U.S. 974, 120 S. Ct. 419 (1999), *r'hrg. denied*, 528 U.S. 1108, 120 S. Ct. 855 (2000).

Following lengthy state and federal habeas proceedings, Cromartie filed

a petition for writ of certiorari in the United States Supreme Court from the

Eleventh Circuit Court of Appeals, which was denied on December 3, 2018.

*Cromartie v. Sellers*, ___ U.S. ___, 139 S. Ct. 594 (2018).  On December 27,

2018, Cromartie filed his extraordinary motion for new trial in Thomas

County Superior Court seeking DNA testing for the first time under O.C.G.A.

§ 5-5-41(c).  The trial court held a hearing on Cromartie's motion and on

September 16, 2019, the trial court denied Cromartie's request for DNA

testing.  Cromartie timely filed an application for discretionary appeal with

this Court on October 11, 2019.  The Georgia Supreme Court summarily

denied Cromartie's application today, October 25, 2019.

On October 22, 2019, Cromartie filed this complaint challenging Georgia's

DNA statute, O.C.G.A. § 5-5-41(c).  Additionally, on October 24, 2019, Cromartie filed a

corresponding motion to stay his execution scheduled for October 30, 2019 at 7:00 p.m. at the

Georgia Diagnostic and Classification Prison.  Cromartie s' pre-answer motion to

dismiss and response in opposition his motion for stay follow.

### C.  O.C.G.A. § 5-5-41

O.C.G.A. § 5-5-41(c) states:

(1)  Subject to the provisions of subsections (a) and (b) of this
Code section, a person convicted of a felony may file a written
motion before the trial court that entered the judgment of

conviction in his or her case for the performance of forensic deoxyribonucleic acid (DNA) testing.

(2)  The filing of the motion as provided in paragraph (1) of this subsection shall not automatically stay an execution.

(3)  The motion shall be verified by the petitioner and shall show or provide the following:

(A)  Evidence that potentially contains deoxyribonucleic acid (DNA) was obtained in relation to the crime and subsequent indictment, which resulted in his or her conviction;

(B)  The evidence was not subjected to the requested DNA testing because the existence of the evidence was unknown to the petitioner or to the petitioner's trial attorney prior to trial or because the technology for the testing was not available at the time of trial;

(C)  The identity of the perpetrator was, or should have been, a significant issue in the case;

(D)  The requested DNA testing would raise a reasonable probability that the petitioner would have been acquitted if the results of DNA testing had been available at the time of conviction, in light of all the evidence in the case;

(E)  A description of the evidence to be tested and, if known, its present location, its origin and the date, time, and means of its original collection;

(F)  The results of any DNA or other biological evidence testing that was conducted previously by either the prosecution or the defense, if known;

**(G)** If known, the names, addresses, and telephone numbers of all persons or entities who are known or believed to have possession of any evidence described by subparagraphs (A) through (F) of this paragraph, and any persons or entities who have provided any of the information contained in petitioner's motion, indicating which person or entity has which items of evidence or information; and

**(H)** The names, addresses, and telephone numbers of all persons or entities who may testify for the petitioner and a description of the subject matter and summary of the facts to which each person or entity may testify.

**(4)** The petitioner shall state:

**(A)** That the motion is not filed for the purpose of delay; and

**(B)** That the issue was not raised by the petitioner or the requested DNA testing was not ordered in a prior proceeding in the courts of this state or the United States.

**(5)** The motion shall be served upon the district attorney and the Attorney General. The state shall file its response, if any, within 60 days of being served with the motion. The state shall be given notice and an opportunity to respond at any hearing conducted pursuant to this subsection.

**(6)** (A) If, after the state files its response, if any, and the court determines that the motion complies with the requirements of paragraphs (3) and (4) of this subsection, the court shall order a hearing to occur after the state has filed its response, but not more than 90 days from the date the motion was filed.

**(B)** The motion shall be heard by the judge who conducted the trial that resulted in the petitioner's conviction unless the presiding judge determines that the trial judge is unavailable.

10

(C)  Upon request of either party, the court may order, in the interest of justice, that the petitioner be at the hearing on the motion. The court may receive additional memoranda of law or evidence from the parties for up to 30 days after the hearing.

(D)  The petitioner and the state may present evidence by sworn and notarized affidavits or testimony; provided, however, any affidavit shall be served on the opposing party at least 15 days prior to the hearing.

(E)  The purpose of the hearing shall be to allow the parties to be heard on the issue of whether the petitioner's motion complies with the requirements of paragraphs (3) and (4) of this subsection, whether upon consideration of all of the evidence there is a reasonable probability that the verdict would have been different if the results of the requested DNA testing had been available at the time of trial, and whether the requirements of paragraph (7) of this subsection have been established.

(7)  The court shall grant the motion for DNA testing if it determines that the petitioner has met the requirements set forth in paragraphs (3) and (4) of this subsection and that all of the following have been established:

(A)  The evidence to be tested is available and in a condition that would permit the DNA testing requested in the motion;

(B)  The evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect;

(C)  The evidence was not tested previously or, if tested previously, the requested DNA test would provide results that are reasonably more discriminating or probative of the identity of the perpetrator than prior test results;

(D)  The motion is not made for the purpose of delay;

(E)  The identity of the perpetrator of the crime was a significant issue in the case;

(F)  The testing requested employs a scientific method that has reached a scientific state of verifiable certainty such that the procedure rests upon the laws of nature; and

(G)  The petitioner has made a prima facie showing that the evidence sought to be tested is material to the issue of the petitioner's identity as the perpetrator of, or accomplice to, the crime, aggravating circumstance, or similar transaction that resulted in the conviction.

## III.  ARGUMENT AND CITATION OF AUTHORITY

Cromartie seeks declaratory and injunctive relief under § 1983.  After all of his appeals were exhausted, Cromartie sought DNA testing in state court under O.C.G.A. § 5-5-41(c) as part of an extraordinary motion for new trial.  The trial court denied Cromartie's request for DNA testing because Cromartie failed to establish "a reasonable probability that the petitioner would have been acquitted if the results of DNA testing had been available at the time of conviction, in light of all the evidence in the case" or that the motion was not filed for the "purpose of delay."  O.C.G.A. § 5-5-41(c)(3)(D) & (7)(D); Plaintiff's App. A(1).  Cromartie argues that he is entitled to relief

under § 1983 and requests a stay of execution; however, as his challenge to § 5-5-41 lacks merit, he has failed to plead a "claim upon which relief can be granted" and his complaint should be dismissed and his motion for stay should either be denied or dismissed as moot.  Fed. R. Civ. P. 12(b)(6).

### A.   Preliminary Issues

Defendants discuss two preliminary issues before turning to Cromartie's substantive claims.

### 1.   Jurisdiction

Cromartie asserts that "[t]his action under 42 U.S.C. § 1983 ("Section 1983") challenges the constitutionality of § 5-5-41(c) both on its face and as applied by the Georgia courts."  (Doc. 1 at 4).  The Supreme Court held in *Skinner v. Switzer*, 562 U.S. 521, 532-33, 131 S. Ct. 1289, 1298 (2011), that a facial constitutional challenge to a state's statute regarding postconviction DNA testing falls within the subject-matter jurisdiction of a § 1983 suit. However, the *Skinner* Court was clear that a challenge to the state court's actual denial of testing was not reviewable in federal court.  *Skinner*, *supra*, at 532.  Consequently, to the extent Cromartie is challenging the specific

denial of DNA testing by the state courts, this court lacks subject-matter jurisdiction and this portion of Cromartie's complaint should be dismissed.

Skinner filed two requests for DNA testing in state court. *Skinner, supra,* at 528.  The Texas Court of Criminal Appeals (CCA) denied both requests, albeit for different reasons.  *Id.* at 528-29.  However, Skinner did "not challenge the prosecutor's conduct or the decisions reached by the CCA in applying Article 64 to his motions; instead, he challenge[d], as denying him procedural due process, Texas' postconviction DNA statute 'as construed' by the Texas courts."  *Id.* at 530.  The Court explained that because Skinner did "not challenge the adverse CCA decisions themselves"—which would be a non-reviewable state court decision—but instead "target[ed] as unconstitutional the Texas statute they authoritatively construed," his claim was reviewable under § 1983.  *Id.* at 532.

Subsequently, applying both *Skinner* and *Osborne*, the Eleventh Circuit held that there was no jurisdiction in a § 1983 action over an as-applied challenge to a state's postconviction DNA access statute.  *Alvarez v. AG for Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012).  Alvarez raised a facial and as-applied challenge to "Florida's postconviction DNA access procedures"

14

codified under Fla. R. Crim. P. 3.853. *Alvarez, supra,* at 1258. Specifically, Alvarez's "as-applied procedural due process claim plainly and broadly attack[ed] the state court's <u>application</u> of Florida's DNA access procedures to the facts of his case."[4] *Id.* at 1263 (emphasis in original). The Court held that under the *Rooker-Feldman* doctrine, Alvarez's challenge was barred from consideration. *Id.* at 1262. The Court explained that the *Rooker-Feldman* doctrine barred federal review "where the issue before the federal court was 'inextricably intertwined' with the state court judgment so that (1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed 'only to the extent that the state court wrongly decided the issues.'" *Id.* at 1262-63 (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam) (internal quotation marks omitted)). Because Alvarez's claim fell within the *Rooker-Feldman* "orbit," the federal courts were barred from considering his as-applied challenge to Florida's postconviction DNA statute.

---

[4] However, on appeal in the Eleventh Circuit, Alvarez "expressly abandoned <u>any</u> challenge to the facial constitutionality of Florida's procedures." *Id.*

Therefore, to the extent that Cromartie is challenging the application of § 5-5-41 to "the facts of his case" his claim is barred as this Court does not have jurisdiction to consider this subject-matter.

## 2.   Proper Party for Requested Remedy

Cromartie has requested as relief in his complaint that this Court issue a "preliminary and permanent injunction prohibiting Defendants from executing Mr. Cromartie" and has filed a separate motion for stay of execution.  Doc. 1 at 26; Doc. 6.  Cromartie has identified the District Attorney and the Thomas County Superior Court clerk as the Defendants in both his complaint and motion for stay of execution.  Doc. 1; Doc. 6.  However, neither Defendant has custody or current authority to forestall Defendant's scheduled execution.  O.C.G.A. § 17-10-38(b) states:

> In all cases in which the defendant is sentenced to death, it shall be the duty of the trial judge in passing sentence to direct that the defendant be delivered to the Department of Corrections for execution of the death sentence at a state correctional institution designated by the department.

As the execution order has already been signed by the trial court, the Department of Corrections is the only party that can be enjoined to prevent Cromartie's execution.

16

**B.     Cromartie's complaint should be dismissed.**

**1.     Standard of Review**

This Court may grant Cromartie declaratory and injunctive relief only if Cromartie establishes:  1) "a substantial likelihood of success on the merits of the underlying case;" 2) that he "will suffer irreparable harm in the absence of" relief; 3) that "the harm suffered by[him] in the absence of [relief] would exceed the harm suffered by [Defendants] if [relief] is issued;" and 4) "[relief] would not disserve the public interest." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008); *see also Thomas v. Blue Cross & Blue Shield Ass'n.*, 594 F.3d 823, 830 (11th Cir. 2010).  Thus, Cromartie bears the burden of persuasion.  *See Glossip*, 135 S. Ct. at 2739.

Additionally, under Fed. R. Civ. Pro. 8(a), a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  That is, Cromartie must plead "enough facts to state a claim to relief that is plausible on its face." *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 803 F.3d 565, 568 (11th Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).  "[A] plaintiff cannot rely on naked assertions devoid of further factual enhancement."  *Gissendaner*, 805 F.3d at 568 (internal quotation marks omitted) (alteration in original).  The complaint "must include enough facts to raise a right to relief above the speculative level."  *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 864 (11th Cir. 2017).

A complaint that fails to satisfy these requirements may be dismissed for failure to state any claim for which relief can be granted.  Fed. R. Civ. Pro. 12(b)(6).  To determine whether an action fails to state a claim upon which relief can be granted, this Court must engage in a two-step inquiry.  First, this Court "should eliminate any allegations in the complaint that are merely legal conclusions."  *Id.*  Second, "where there are well-pleaded factual allegations, [this Court should] assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  This is a context-specific task that requires this Court to draw on its judicial experience and common sense.  *Iqbal*, 556 U.S. at 680.

As shown below, Cromartie fails to state a claim warranting declaratory or injunctive relief.  His complaint should be dismissed.

## 2.    No Substantial Likelihood of Success on the Merits

### a.    Cromartie's due process challenge is meritless.

As stated *supra*, Cromartie "challenges the constitutionality of § 5-5-41(c) both on its face and as applied by the Georgia courts." Doc. 1 at 4. Specifically, Cromartie argues that "Section 5-5-41(c) as construed by the Georgia Supreme Court violates fundamental fairness in at least two ways." *Id.* at 19. The two ways enumerated by Cromartie are: 1) that the requirements that a defendant establish that the request for DNA testing was not made for the "purpose of delay" and that his request for a new trial was sought "as soon as possible" create an "unfair burden"; and 2) that the "reasonable probability" requirement has been construed into a "totally subjective review of the trial evidence, with no meaningful assessment of the weaknesses in that evidence or the manner in which DNA test results could offset the trial evidence and change the entire evidentiary picture." Doc. 1 at 19-21. To the extent that these are facial challenges to § 5-5-41, Cromartie has failed to state a claim upon which relief can be granted in this action.

A nearly identical claim was raised in *DA's Office v. Osborne*, 557 U.S. 52, 129 S. Ct. 2308 (2009), and was rejected by the Court. Osborne sought

DNA testing and the Alaska courts denied his request.  Osborne filed a §

1983 action in federal court, and ultimately the Ninth Circuit held that, *inter*

*alia,* the State had an on-going duty to "disclose exculpatory evidence" even

after conviction and granted the relief requested.  *Osborne*, 557 U.S. at 61.

The Supreme Court granted certiorari review to determine "whether

[Osborne had] a right under the Due Process Clause to obtain postconviction

access to the State's evidence for DNA testing."[5]  *Id.*  The court held that a

state prisoner had no "freestanding right to DNA testing evidence" under the

due process clause in federal court.  *Id.* at 72-73.  Additionally, and pertinent

to Cromartie's claim before this Court, the Supreme Court held that Osborne

failed to prove that the Alaska procedures for postconvcition DNA testing

"'offend[ed] some principle of justice so rooted in the traditions and conscience

of our people as to be ranked as fundamental,' or 'transgress[ed] any

recognized principle of fundamental fairness in operation.'"  *Id.* at 69 (quoting

*Medina* v. *California*, 505 U.S. 437, 446, 448, 112 S. Ct. 2572 (1992) (internal

quotation marks omitted)).

---

[5] The Court also granted certiorari "to decide whether Osborne's claims could
be pursued using § 1983" but ultimately declined to answer that question.  *Id.*
As state above, the Court later answered this question in *Skinner*.

Likewise, Cromartie has also failed to prove that the requirements of §
5-5-41 violate any "principal of justice" ingrained in our nation or any
"recognized principle of fundamental fairness in operation." *Id.* Although
Cromartie argues that the it is the construction and application of the above
listed requirements by the Georgia Supreme Court that renders them
"fundamentally unfair" a close reading of his arguments show they are
merely complaints about § 5-5-41, not the state court's construction of the
statute's requirements. Cromartie first complains that the "undue delay" and
diligence requirements as construed by the Georgia Supreme Court are
"fundamentally unfair" because a defendant may have to request DNA
testing that will consume the DNA evidence before science has reached a
stage to reveal quantifiable results.  But the state court did not "construe"
these requirements in this manner, it merely has applied them given their
obvious meanings under the facts of a given case.

Additionally, the Alaska procedures and the federal statute for
postconviction DNA testing, 18 U.S.C.S. § 3600, that withstood scrutiny in
*Osborne* had similar requirements.  Alaska's statute for new trial required
that the "newly available" evidence "must have been diligently pursued."  *Id.*

21

at 70.  And § 3600(a)(10) requires that the motion be "made in a timely fashion."  Cromartie fails to show that either requiring a defendant to be diligent in bringing a postconviction motion for new trial or establishing that a motion was not made for delay purposes "offends" *any* "traditions or conscience of our people" or violates a "recognized principle of fundamental fairness."  *Medina*, 505 U.S. at 446; *see also Alvarez*, 679 F.3d at 1266 n.2 ("inasmuch as [a state's] postconviction DNA access procedures either mirror or are more applicant-friendly than the Alaska and federal statutes endorsed in *Osborne*, [a state's] postconviction DNA access procedures plainly do not offend any principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, nor do they transgress any recognized principle of fundamental fairness in operation")

Cromartie's second complaint is that the requirement that the Georgia Supreme Court has unfairly construed the requirement in § 5-5-41(c)(3)(D), which states: "The requested DNA testing would raise a reasonable probability that the petitioner would have been acquitted if the results of DNA testing had been available at the time of conviction, in light of all the evidence in the case."  Cromartie argues that the state court has "construed"

this requirement to mean that "§ 5-5-41(c) precludes testing on this ground if

the evidence presented at trial was 'overwhelming.'"  Doc. 1 at 21 (quoting

*Crawford v. State*, 278 Ga. 95, 97 (2004)).  *Crawford* is a fact-specific

application of § 5-5-41(c)(3)(D), and the court actually held:

> Upon our review of the trial record and the record of Crawford's
> extraordinary motion for new trial, we conclude the trial court
> did not err in concluding that Crawford's motion for DNA testing
> failed to set forth a showing that the requested DNA testing
> might have yielded results that in reasonable probability would
> have led to his acquittal if those results had been available at his
> original trial. We find that the trial court, after referencing
> discussions of Crawford's requests for DNA testing in other
> courts under other legal standards, properly weighed Crawford's
> hypothesized DNA testing results against the overwhelming
> evidence actually presented at Crawford's trial under the proper
> Georgia statutory standard. *See* O.C.G.A. § 5-5-41 (c) (3) (D).

*Crawford, supra.*  This holding, on its face, does not represent a construction

of § 5-5-41(c)(3)(D) but instead merely an application of this requirement to

the facts of *Crawford*'s case.

Moreover, again in *Osborne*, the Court determined similar

requirements in the Alaska and federal procedures were not unconstitutional.

In Alaska, the postconviction DNA procedures required that the evidence be

"be sufficiently material" and 3600(a)(6) required that the evidence was "not

inconsistent with an affirmative defense presented at trial" <u>and</u> would "raise

a reasonable probability that the applicant did not commit the offense."
*Osborne, supra*, at 70.  Notably, § 5-5-41(c) does not require that the evidence
be consistent with a defense presented at trial but merely that "[t]he identity
of the perpetrator was, *or should have been*, a significant issue in the case."
O.C.G.A. § § 5-5-41(c)(3)(C) (emphasis added).  Thus, Cromartie has not
proven that the "reasonable probability" requirement "offends the traditions
or conscience of our people" or violates a "recognized principle of fundamental
fairness."  *Medina*, 505 U.S. at 446; *see also Alvarez*, 679 F.3d at 1266 n.2.

Therefore, as Cromartie's claim clearly has no merit, he has failed "to
state a claim upon which relief can be granted" in this proceeding and his
complaint should be dismissed.  Fed. R. Civ. P. 12(b)(6).

### b.   Cromartie's access to courts claim is meritless.

Cromartie also asserts that the Georgia Supreme Court's
construction of the delay, diligence, and reasonable probability
requirements of § 5-5-41 denied him "meaningful access to available
judicial remedies."  Doc. 1 at 22.  While Cromartie has a due process
right of access to courts, "to establish a violation of that right, 'a
prisoner must show an actual injury.'"  *Alvarez, supra,* at 1265 (quoting

*Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1271 (11th Cir. 2010)).  In order to show an "actual injury," Cromartie must "'prove that he has a colorable underlying claim for which he seeks relief.'"  *Id.* at 1266 (quoting *Barbour v. Haley*, 471 F.3d 1222, 1226 (11th Cir. 2006)).  Cromartie has failed to make this showing and his complaint should be dismissed.

Cromartie's right of access to court claim is premised upon his facial challenge to § 5-5-41(c) as argued above.  And he failed to prove that the undue delay, diligence, and reasonable probability requirements of § 5-5-41 either "offend[ed] any principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, [or] transgress[ed] any recognized principle of fundamental fairness in operation."  *Id.* at 1266 n.2.  Moreover: he was given the opportunity to fully brief his request to the trial; the State was required to file a response within 60 days of being served with the motion; was provided an evidentiary hearing before the trial court; and he appealed the trial court's decision to the Georgia Supreme Court.  These allowances are more than provided by Alaska and the federal

statute as neither "explicitly provide for the possibility of a hearing on a motion to obtain DNA testing" nor "explicitly provide[] for the right to appeal an adverse decision on the motion" and the federal statute does not "set[] a definitive limit on the time period within which the government must respond to a motion seeking postconviction DNA testing." *Id.*

Given Cromartie's failure to prove that § 5-5-41 violated his due process rights, he has not shown he has a "colorable underlying claim for which he seeks relief," thus, no "actual injury." Again, Cromartie's complaint should be dismissed for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Additionally, as Cromartie has failed to show he can succeed on the merits of his claim, his motion for stay of execution should be denied and/or dismissed as moot.

### 3.    No Right to Equitable Relief

Cromartie is not entitled to injunctive or declaratory relief for another reason: the equities are not in his favor. "Injunctive relief . . . is an equitable remedy that is not available as a matter of right." *Jones*, 811 F.3d at 1296. "[E]quity must be sensitive to the State's

strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.* (internal quotation marks omitted). Georgia has an interest in carrying out Cromartie's sentence rendered by a jury of his peers and this court should be "particularly reluctant to interfere in Georgia's enforcement of the death penalty since its current protocol -- using compounded pentobarbital provided by an undisclosed source -- has actually been used at least [19] times in the last four years, without incident." *Id.*

Therefore, due to applicable and binding Eleventh Circuit precedent, Cromartie is not entitled to the declaratory or injunctive relief he seeks. This Court should dismiss his complaint in its entirety because he has not shown a substantial likelihood of success on the merits and the equities counsel against granting relief.

## CONCLUSION

For the above and foregoing reasons, this Court should dismiss Cromartie's complaint, and deny his request for injunctive and declaratory relief.

Respectfully submitted,

| | |
|---|---|
| Christopher M. Carr | 112505 |
| Attorney General | |
| | |
| BETH A. BURTON | 027500 |
| Deputy Attorney General | |
| | |
| TINA M. PIPER | 142469 |
| Senior Assistant Attorney General | |

*/s/Sabrina Graham*
_____
SABRINA GRAHAM                    305755
Senior Assistant Attorney General

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have this day, the 25th of October, 2019, electronically filed this pleading with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Aren Adjoian
Eric J. Montroy
Federal Community Defender for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106

/s/ *Sabrina Graham*_____
Sabrina Graham
Senior Assistant Attorney General